**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **ADAM ZIMMERMANN** | : | **Case Number:** 2:22-cv-2140 |
| c/o Barron, Peck, Bennie & Schlemmer | : | |
| 3074 Madison Rd. | : | **Judge:** |
| Cincinnati, Ohio 45209, | : | |
| | : | |
| Plaintiff, | : | |
| -vs- | : | |
| | : | |
| **THE CITY OF NEWTON FALLS** | : | |
| 612 West Broad Street | : | |
| Newton Falls, OH 44444 | : | |
| | : | |
| Defendant. | : | |

---

**VERIFIED COMPLAINT FOR DECLARATORY,
INJUNCTIVE, AND MONETARY RELIEF**

---

Plaintiff Adam Zimmermann states the following for his Verified Complaint against Defendant City of Newton Falls:

**INTRODUCTION**

1. This is a lawsuit, brought under 42 U.S.C. 1983 and 1988, to remedy violations of Plaintiff Adam Zimmermann's right to access and petition his government representatives and to freely express his opinions as to matters of political and public concern. Defendant City of Newton Falls relies upon a public participation policy which vests the unbridled discretion in its Mayor to enforce content-based public participation rules to silence speech that criticizes government officials for their impropriety and unlawful conduct. Here,

1

Plaintiff Adam Zimmermann was silenced for little more than reading a prepared statement that challenged the propriety of his government officials.

## PARTIES

2. Plaintiff Adam Zimmermann ("Zimmermann") is a resident of Trumbull County, OH.

3. Defendant City of Newton Falls ("Defendant") is a village located in Trumbull County, OH.

## JURISDICTION AND VENUE

4. Jurisdiction is proper in this Court because this is a federal question of law under 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

5. Venue is proper in this Court because the transactions and occurrences happened in Trumbull County, OH.

## BACKGROUND FACTS

6. Defendant is a city located in Trumbull County, OH.

7. Zimmermann once served on Defendant's city Council.

8. Zimmermann is a political critic of Mayor Ken Kline ("Kline"), City Manager Pamela Priddy ("Priddy"), and other Councilmembers, including Tesa Spletzer ("Spletzer").

9. Kline serves as the presiding officer of the Council's meetings in his capacity as Mayor.

10. Kline is therefore the final decisionmaker that decides who speaks and does not speak at Council meetings under the Defendant's policy.

11. Kline clearly harbors animosity towards Zimmermann regarding Zimmermann's criticisms of Kline's conduct in office.

12. While Zimmermann was in office, Kline would permit other councilmembers to speak out of turn to criticize Zimmermann, but he would silence Zimmermann for criticizing his fellow Councilmembers political decisions and conduct or even defending Zimmermann's own conduct against accusations.

13. On more than one occasion while Zimmermann was still in office, Kline had an officer physically remove Zimmermann for his viewpoints.

14. For example, Kline is seen and heard in a video in one meeting removing Zimmermann because Zimmermann was looking at Kline.

15. This is not an exaggeration.

16. Kline is literally heard telling Zimmermann during a public meeting that if Zimmermann did not stop looking at Kline, he would have the police physically remove him.

17. Zimmermann tried to explain to Kline that he is permitted to look at Kline.

18. Kline then retaliated and ordered an officer to physically remove Zimmermann. See https://www.youtube.com/watch?v=_A09cuf2boE&t=8323s (beginning at 2:17, where Kline is clearly heard stating "don't sit there looking at me" and "divert your eyes" before ordering an officer to physically remove Zimmermann).

19. Therefore, Kline's personal animosity runs so deep, he used Defendant's police power to remove and intimidate Zimmermann for merely looking in his general direction.

20. Defendant's leadership is known for abusing and attempting to abuse its police power in other manners.

21. For example, in one circumstance, Spletzer called 911's emergency line and attempted to have Defendant's City Manager arrested for obstruction of justice because that previous manager refused to give her documents.

22. Aside from wasting taxpayers' money, and emergency personnel's time, Spletzer abused her position to attempt to intimidate Defendant's employee.

23. Spletzer was also arrested for an OVI in 2021.

24. While Newton Falls Police were handling the manner lawfully, Spletzer was caught on chest camera spitting at her own officers' feet and calling them "piece of shits!" See.,https://www.wfmj.com/story/44757255/police-bodycam-video-shows-arrest-of-newton-falls-councilwoman

25. In recent months, the Council has been deliberating whether to hire the interim City Manager as the Defendant's full-time City Manager.

26. This City Manager, Pamela S. Priddy ("Priddy"), was indicted in November of 2018 by the US Department of Justice and charged with "22 counts of bank fraud and four counts of theft from a health benefit program." https://www.justice.gov/usao-ndoh/pr/newton-falls-woman-indicted-stealing-377000-healthcare-plans-she-administered-and-using.

27. Although the DOJ eventually dismissed its claims without prejudice, Zimmermann was concerned that Priddy is not the best person to serve the Defendant as City Manager because of her alleged crimes and controversial past.

28. Zimmermann also believes that Priddy is responsible for several legal woes Defendant now faces with its employees after terminating numerous employees.

29. Zimmermann is no longer on Council, and he wishes to use public participation during Defendant's Council meetings to state his grievances with the conduct and

decisions of his government regarding matters involving Spletzer's conduct, Priddy's conduct, Defendant's decision to hire Priddy, and Defendant's conduct generally.

30. Surely, a Councilmember spitting at officers and calling 911 to intimidate a City Manager are matter of public concern that the public not only has a right to gripe about, but ultimately should gripe about.

31. In addition, Priddy's prior indictments for crimes of dishonesty regarding the trust of funds are clearly matters of public concern for taxpayers.

32. Indeed, it is difficult to imagine what politically aware taxpayer would not suffer some heartburn knowing that a person with such a controversial past involving allegations of fraud was handling the public coffers.

33. Zimmermann has also desired to state his grievances for what he perceives as his government's conflicts of interests in their duties.

34. On December 15, 2021, Zimmermann first tried to criticize his government for certain conflict of interests at the beginning of the meeting.

35. As soon as he began to criticize his government for certain conflicts of interests, Kline immediately interrupted him by loudly slamming his gavel. See, https://www.youtube.com/watch?v=OsLIhRH_GcQ&t=1441s (at approximately 19:00).

36. Kline then told Zimmermann that he could not make his statements at first because he claimed that "there is no proof of anything," so "don't allege it." (Id.)

37. Thus, Kline expressly told Zimmermann that he was not permitted to allege that his government was acting improperly in their official conduct.

38. Kline specifically stated that Zimmermann was not permitted to "suggest any impropriety." (Id.)

39. Zimmermann then attempted to talk about the contract with the interim law director and the amount of money the Defendant was spending on her contract.

40. Zimmermann then tried to criticize one of the councilmembers because she was caught on video spitting at police officers while pulled over for an OVI. (Id. at 2:22).

41. Kline once again immediately shut Zimmermann down and would not let him voice his grievance with what he perceived as his elected official's unlawful conduct, which was spitting at an officer.

42. Kline claimed that Zimmermann could not make these comments because they were not on the agenda.

43. Later in the meeting, Defendant held a second time for public participation, which was not limited to items on the agenda in any manner.

44. Zimmermann wanted to use this time to state his grievances about what he believes is his elected officials' unlawful conduct because his comments did not need to relate to the agenda in any manner during the second public session. (Id. at 2:20:34).

45. Once again, as soon as Zimmermann began discussing Defendant's ethical duties, Kline started loudly slamming his gavel to silence Zimmermann's criticisms. (Id.)

46. Kline then shouted at Zimmermann that "you do not have the right to make allegations on anybody up here!" (Id. at 2:22:09).

47. Immediately thereafter, Kline ordered the police chief to remove Zimmermann physically from the meeting. (Id.)

6

48. Zimmermann asked the chief why he was being removed, and the chief informed him that Zimmermann was "disrupting a public meeting." (Id.)

49. However, Zimmermann tried to explain that he was only trying to read from a prepared statement peacefully. (Id.)

50. While the chief was escorting Zimmermann out of the meeting, Kline once again voiced his real motivation for removing Zimmermann.

51. Kline explained that Zimmermann did not have the right to make "unfounded suggestions of impropriety of anybody up here." (Id.)

52. Thus, Kline did not slam his gavel, interrupt, or silence Zimmermann because he was screaming, threatening, or otherwise actually disrupting a meeting.

53. Kline slammed his gavel and had Zimmermann removed because Zimmermann voiced his criticisms of his government officials and alleged that they were acting improperly.

54. Again, on April 19, 2022, Zimmermann attempted to speak during public participation.

55. This time, Zimmermann wanted to state his grievances regarding Defendant's deliberations to permanently hire Priddy as its City Manager.

56. As soon as Zimmermann began arguing that he did not feel that Pamela Priddy was the proper choice because of the 22 counts of fraud she was indicted on, Kline predictably slammed his gavel and would not let Zimmermann state his grievances.

57. Zimmermann was not shouting and did not threaten anyone.

58. Zimmermann did nothing to intentionally disrupt the meeting.

7

59. Instead, Zimmermann has only ever intended to present his viewpoints that he believes his government does not conduct itself lawfully, and that Defendant should not hire a city manager who was indicted on 22 counts of fraud.

60. Kline is the culprit of the actual disruptive behavior.

61. Indeed, every time Zimmermann peacefully tries to state his grievances from a prepared statement at the lectern, Kline explodes in fits where he aggressively slams his gavel, screams at Zimmermann, and immediately threatens to have Zimmermann physically removed or arrested.

62. Most recently, during Defendant's May 4th, 2022 public meeting, Defendant again silenced Zimmermann's speech.

63. This time, Zimmermann attempted to criticize Defendant based on his belief that Priddy was responsible for subjecting the Defendant to several legal matters that were avoidable.

64. As soon as Zimmermann began to state that Priddy was responsible for four lawsuits against the City, Kline once again absurdly pounded his gavel, told Zimmermann that he could not make those accusations, and would not let Zimmermann finish his statement.

65. Zimmermann peacefully sat down because Kline and his fellow abusing allies have made it abundantly clear that they will abuse their power to remove him with an armed officer.

66. Ironically, because Defendant will not let Zimmermann state his grievances regarding lawsuits against Defendant, the Defendant has invited this lawsuit here.

8

67. Defendant's Rules of Public Participation ("Rules") are intentionally drafted to silence the public suggesting the government of acting with any "impropriety." (Exhibit 1 at 7).

68. In addition, Defendant prohibits the public of even making "comments" of a "personal nature." (Id.)

69. Whether government officials are engaged in "impropriety" is clearly an expression about information that is of great public concern, such as Priddy's indictments and Spletzer's abuse of 911 and willingness to launch bodily fluids at officers.

70. The express language of Defendant's Rules states the following:

> Accusations or **suggestions of impropriety** or illegal conduct and/or **comments** or attacks **of a personal nature are prohibited**. The presiding officer may issue a warning the first time that a speaker fails to abide by this rule but shall declare the balance of a speaker's speaking time to have been forfeited if a subsequent offense should occur.

71. Therefore, Defendant's public participation rules are specifically designed to shield the government from any personal criticisms and grievances whatsoever.

72. Kline enforces these viewpoint-based rules with a particular vengeance against Zimmermann.

73. In addition to removing Zimmermann for meetings, Defendant has also abused its power to file zoning citations against Zimmermann for expressive signage on Zimmermann's own property.

74. Zimmermann lives very close to the Defendant's administrative building.

75. Zimmermann has placed signs on his own property that criticize Defendant and its leadership's conduct.

76. One sign said "Bring Back Chief Fixler" because Zimmermann believes that Defendant unlawfully terminated the Chief to retaliate against him for holding Spletzer accountable for her crimes.

77. Some of these signs are admittedly snarky.

78. Another sign poked some fun at Priddy and was titled "Priddy's Playhouse" and pointed at the City Administration building.

79. Zimmermann's signs all make expressive political statements on matters of public concern.

80. Defendant recently cited Zimmermann with zoning code violations for placing political signs in his own property without any legal justification for doing so.

81. Defendant issued these citations to retaliate against Zimmermann to chill his protected speech.

82. This is just another example of Defendant and its thin-skinned leaders abusing Defendant's police power to intimate and retaliate against critics.

## STATEMENT OF CLAIMS

### Count 1
### 42 U.S.C.§ 1983 – First Amendment Violation
### (freedom of speech)

83. Zimmermann restates and incorporates all previous paragraphs.

84. Zimmermann is a concerned citizen, who desires to attend Council meetings and petition his government with grievances on matters of public concern.

85. Zimmermann has attempted to speak at Council meetings to state his grievances and beliefs that some of his elected officials are not conducting themselves lawfully

in office, and that they should not hire a city manager who was indicted on 22 counts of fraud.

86. Zimmermann's speech is protected under the First Amendment of the United States Constitution because it addresses matters of great public concern.

87. Defendant's Mayor, Kline, is the final decisionmaker regarding the enforcement of its rules as a matter of Defendant's policy.

88. The Defendant has violated Zimmermann's right of free expression in the following ways.

### Facial Constitutional Claims

89. The Defendant's Rules impose facially unconstitutional restrictions on the speech of Zimmermann and the public generally.

90. Defendant's unconstitutionally content-based rules unlawfully prohibit "comments" that are "of a personal nature."

91. This rule is both facially viewpoint-based and content-based because it prohibits any "comment" that provides any expressive grievance of any elected official.

92. This rule unconstitutionally seeks to prohibit essentially any criticism whatsoever.

93. This rule does nothing to promote efficiency, and it has everything to do with viewpoints.

94. Moreover, Defendant's Rules of Public Participation also prohibit the public from even "suggesting" that any of its elected officials have acted with any impropriety.

95. This rule likewise has nothing to do with content-neutral regulation to promote efficiency or protect against disruption.

96. On the contrary, it is another viewpoint-based restraint on the public's criticisms of its elected officials.

97. Defendant's Rules are viewpoint-based, vague, and overly broad restraints on free expression on matters of public concern.

### As-Applied Constitutional Claims

98. Defendant retaliated against Zimmermann when it silenced his criticisms, would not let him finish his statements, ordered him to leave the lectern, and had him escorted from the meeting with an armed officer.

99. Defendant removed and threatened Zimmermann for stating his grievances about the potential conflicts of his elected officials, as well as the criminal indictments of Defendant's City Manager.

100. When Defendant silenced Zimmermann, Defendant has cited its unconstitutional Rules that restrain comments of a personal nature and suggestions of impropriety.

101. Therefore, Defendant has habitually silenced Zimmermann's speech based upon unconstitutional rules of public participation.

102. Defendant has silenced Zimmermann for his critical viewpoints and attempted to chill his speech.

103. On all occasions, Zimmermann has read from prepared statements, he has not physically threatened any member of the government, and he has not expressed any obscenities.

104. Zimmermann has never set out to disrupt any meeting.

105. On the contrary, it is Kline's temper and retaliatory animus that disrupts the meetings.

106. Indeed, if Kline was able and willing to permit criticisms of himself and his allies, it is hard to imagine how one man reading a typed statement would ever cause any chaos whatsoever.

107. Simply stated, Kline and his retaliation—not Zimmermann's protected expression—causes disruptions.

108. Moreover, Kline and Defendant seem to not limit their retaliation and punishment of free expression to their meetings.

109. Defendant instead uses its power to also punish Zimmermann for placing signs with political commentary on his own property.

110. Defendant has made it clear to Zimmermann that it will continually abuse its police power to punish his criticisms and protected speech.

111. Defendant has damaged Zimmermann, it has acted maliciously, and it clearly intends to continue punishing Zimmermann for his criticisms.

112. Zimmermann is entitled to compensatory damages, attorney fees, litigation costs, and all expenses associated with this Action.

113. Zimmermann further seeks an order from this Court to enjoin the Defendant from continuing to punish him for engaging in protected speech, restraining his speech, and chilling his speech.

114. Zimmermann further seeks an order enjoining the Defendant from continuing to enforce its unconstitutionally overbroad and viewpoint-based restrictions.

115. Zimmermann further seeks an order protecting all members of the public from the same.

13

**WHEREFORE** Zimmermann respectfully requests that this Court issue judgment in his favor on all counts and award him the following relief:

a. A declaration that the Defendant's actions constitute a violation of Zimmermann's First Amendment rights;

b. Compensatory damages;

c. Injunctive relief precluding the Defendant from restraining Plaintiff's speech;

d. Injunctive relief enjoining the Defendant from placing unbridled discretion in the presiding officer to restrain speech based upon its overbroad and viewpoint-based rules;

e. An award of reasonable attorney fees pursuant to 42 USC 1988;

f. Litigation costs and expenses; and

g. Any other actual damages or equitable relief the Court deems fit under the circumstances.

Respectfully submitted,


**_/s/ Matt Miller-Novak_**
Matt Miller-Novak, Esq.  (0091402)
Barron, Peck, Bennie, &
Schlemmer, Co. LPA
3074 Madison Road,
Cincinnati, OH 45209
Phone: 513-721-1350
Fax:513-721-2301
MMN@BPBSLaw.com


**_/s/ Steven C. Davis_**
Steven C. Davis, Esq. (0065838)
Barron, Peck, Bennie, &
Schlemmer Co. LPA
3074 Madison Rd,
Cincinnati, OH 45209
Phone: 513-721-1350
Fax: 513-721-2301
SCD@BPBSLaw.com

15

## VERIFICATION

I, Adam Zimmermann, verify under penalty of perjury that I have read the facts outlined in this Complaint. I also verify under penalty of perjury the facts outlined in this Complaint are true to the best of my knowledge and recollection.

Adam Zimmermann

I, as a notary of the State of Ohio, witnessed the above sign this Affidavit before me on this ___9th___ day of ___MAY___, 2022.



Notary Public